**Shane Black**

| | |
|---|---|
| From: | Shane Black |
| Sent: | Monday, September 18, 2017 2:35 PM |
| To: | 'Dean Juliana' |
| Subject: | Athens City Schools |
| Attachments: | ACS Virtual Program Information 9-18-17.docx |
| Importance: | High |

Juliana,

Good afternoon!

Please see the attached information sheet concerning the items we discussed on Friday. Please call me with any questions.

Shane



**E. Shane Black**

256-232-0202  Office
256-233-2407  Fax
sblack@handarendall.com

102 South Jefferson Street
Athens, Alabama 35611
www.handarendall.com
vCard | Map

ACS 022409
Response to 3/10/20 Subpoena

GOVERNMENT EXHIBIT 7

# Athens City Board of Education
# Information re: Renaissance School Virtual Program

* With the support of State Superintendent Bice in summer, 2015, Athens City Schools ("ACS") expanded its virtual education program to enroll and educate students residing outside its district boundaries.

* ACS engaged in active efforts to recruit various nontraditional students – including self-motivated home school and nonpublic school students appropriate for a virtual education program – into the Athens Renaissance School's ("ARS") virtual education program.

* As one aspect of its program, ACS explored ways it might partner with nonpublic schools (sectarian and non-sectarian), in order to provide their students with public education offerings.

* In Spring, 2016, some ALSDE officials raised a concern about ACS' involvement with nonpublic schools. In light of those concerns, ACS halted its exploration of contracts and partnerships with nonpublic schools. ACS also issued a requirement that all ARS students, who have been in a nonpublic school, must present withdrawal forms prior to enrollment in the 2016-17 school year.

* Although ACS had no partnerships/contracts/arrangements with any nonpublic schools in the 2016-17 school year, ACS continued to actively recruit nonpublic school students. ACS' philosophy is that students/parents will see that they can obtain a public education, and will migrate from the nonpublic schools.

* ACS has vendors that help make ARS' offerings known to potential students, ensure that the ARS students have access to a good internet/Wi-Fi connection (either at home, a library, or some other public place), have certified teachers who assist the students in their education program, and have counselors who can assist students with their questions.

* ARS' virtual program continued into the 2016-17 school year, enrolling many virtual public school students. Where students had been involved in non-public schools, ACS obtained withdrawal forms, but ACS did not otherwise try to police or monitor that student's activities.

* In March, 2017, ALSDE formed a committee of educators who decided to recommend that the State Superintendent determine that a "full-time" virtual student may not also be enrolled in a nonpublic school. Superintendent Holladay was on that committee.

* However, although the State Superintendent has yet to issue any interpretation on that definition, in the wake of the committee's meetings, ACS created a new form for enrollment in ARS, wherein parents would provide a written certification that their children were not dually enrolled in ARS and a nonpublic school. Those forms are being used by ACS for the 2017-18 school year.

### Lakeside Academy

\*        ACS has reviewed ARS operations for the 2016-17 school year and learned that some students (that had previously been enrolled in nonpublic schools) have continued their relationships with two nonpublic schools, even though they are fully engaged in ARS' virtual program.

\*        In August, 2017, ALSDE's Ethan Taylor provided a list of students who were enrolled in Lakeside Academy in Eufaula. We have confirmed that **174** of the students on Ethan's list are ARS virtual students. Prior to enrolling in the 2016-17 school year, ACS secured forms showing a withdrawal from Lakeside Academy. ACS does not have any relationship or agreement with Lakeside Academy.

\*        All of those 174 ARS virtual students were full-time students in the 2016-17 school year, taking at least 5 virtual courses from ARS. As further confirmation, ACS has personally interviewed 37 of those students (21% of them) and all of those confirmed their full participation in ACS. ACS can also provide the login history, grades and even coursework as additional confirmation for those students.

\*        ACS has learned that these 174 students were also enrolled at Lakeside in some capacity and Lakeside allowed these 174 students time during their school day to work on ACS classes. Lakeside also allowed those grades as credits on Lakeside's academic report for each child.

\*        In addition, one ACS vendor (who ensures that ARS virtual students have access to Wi-Fi/good internet connectivity and facilitators) paid Lakeside Academy (amounting to $150 per student) to enhance Lakeside's internet/wireless connectivity and provide workspace so these ARS students could work on their ACS classes. The vendor also contracted with some teachers, who also worked at Lakeside, to help facilitate the ARS classes.

\*        The students were enrolled in ACS courses as full-time students, and Lakeside accepted those grades as transfer credits. From Lakeside's perspective, these students were receiving a public education, but were receiving additional services/activities from Lakeside, similar to nonpublic school students receiving ACCESS courses from ALSDE.

### Marengo Academy

\*        In addition to the 174 students at Lakeside, ACS identified 92 other 2016-17 ARS students that had previously attended a nonpublic school. There were a total of 25 different nonpublic schools that one or more of the 92 students had attended. ACS contacted each of those 25 nonpublic schools with respect to the corresponding students. ACS determined that **38** of the 92 students were enrolled in a nonpublic school in 2016-17 in addition to being enrolled in ARS. All of those 38 were enrolled in one non-public school: Marengo Academy.

\*       As in the case of Lakeside, all of those 38 students were full-time ARS virtual students, taking at least 5 virtual courses from ARS. ACS can also provide the login history, grades and even coursework as additional confirmation.

\*       ACS does not have any relationship or agreement with Marengo Academy. It explored such a relationship in late 2015- early 2016, but did not pursue it, as explained above.

\*       ACS has learned that Marengo Academy enrolled these 38 students and was allowing them time during their school day to work on ACS classes. There was a lab room where students could go and do that ACS work. For example, 10 students might be in there at one time working on 10 different ACS courses. (ACS does not know if it was then allowing those grades as credits on Marengo's academic report for each child.)

\*       Also, an ACS vendor paid money to Marengo to enhance Marengo's internet/wireless connectivity and provide workspace so these students could work on their ACS classes. In essence, Marengo became a hub for these 38 ARS students, aiding them in taking ARS classes.

\*       Like Lakeside, these students were enrolled in ACS courses as full-time students. From Marengo's perspective, these students were receiving a public education, but were receiving additional services/activities from Marengo, similar to nonpublic school students receiving ACCESS courses from ALSDE.

**Legal Issues**

\*       Nothing described above violated any law. Alabama's virtual law does not contain anything that would prohibit a virtual education student from also being enrolled (either full-time, part-time, or something in between) in non-public school activities (whether enrolled at a private academy, Sunday school, or private swimming lessons).

\*       Indeed, Ala. Code §16-46A-1 (1975) expressly allows a local board to establish "[s]tudent eligibility criteria for initial and continuing participation in the virtual program."

\*       Although a March, 2017 committee assembled by ALSDE recommended that the State Superintendent issue an interpretation that a "full-time student enrolled in a virtual program" could not also be enrolled in a non-public school, the State Superintendent has yet to do so.

\*       ACS' research has not identified any laws in any state prohibiting a student from being enrolled in both a public and non-public school. On the contrary, there are a number of state laws which recognize that dual enrollments are appropriate.

\*       There are certainly places where legal problems can occur. One place is in the context of the Establishment Clause, if the public school engages in some kind of activities in conjunction with a nonpublic church school. This is not a problem in ACS' situation.

\*       Another problem might potentially occur in the area of desegregation. Although local boards might be trying to lure nonpublic students back under a public school umbrella through the

provision of virtual education, a litigant might somehow claim that the local boards' efforts were disrupting continuing desegregation efforts. (Of course, the same might be argued with respect to *any* state assistance to a private school, whether it be through ACCESS or through Alabama's legislation offering tax-credit scholarships through the Alabama Accountability Act.) There is no indication that this is a problem in ACS' situation.

### ACS Actions

\*        While ACS wants to be innovative, it does not want to do anything to imperil its state education funding. Although the State Superintendent has not acted on the March, 2017 committee's recommendation, given the concerns/misgivings expressed by ALSDE in recent weeks, ACS has stopped providing services to the above-described 212 students for the 2017-18 school year, and directed its vendor to stop using Lakeside and Marengo for a hub. Those students are no longer receiving public school services.

\*        ACS is taking multiple steps to ensure that nonpublic students cannot participate in its virtual program for the 2017-18 school year. (ACS has issued that information to ALSDE.)

### ADM

\*        In recent weeks, although (i) ACS is making adjustments to ensure that nonpublic school students cannot participate in its virtual program for the 2017-18 school year and beyond, (ii) no state law prohibits a public school student from being enrolled in a non-public school, and (iii) the State Superintendent has never attempted to prohibit it or ever acted on the committee's recommendation, ALSDE has threatened to withhold ACS' state funding for all or a portion of the ARS virtual students that were also enrolled in nonpublic schools.

\*        However, the 212 ARS virtual students discussed above were full-time students, enrolled by ACS in good faith, and educated by ARS through its virtual program. The fact that they may also have been enrolled in a nonpublic school does not violate any Alabama law and does not make them any less of a public school student.

\*        As such, ACS must respectfully request that ALSDE not withholding any state funding related to the above-described 212 ARS students in the 2016-17 school year.

4