

### ATHENS
CITY SCHOOLS

*455 US Highway 31 North*
*Athens, Alabama 35611-2698*
*Telephone (256)233-6600*
*FAX (256) 233-6640*
*W.L. "Trey" Holladay, Ed. D. ~ Superintendent*

April 30, 2018

Dr. Ed Richardson
Interim State Superintendent of Education
State of Alabama Department of Education
Gordon Persons Building
PO Box 302101
Montgomery, AL 36130-2101

### *VIA HAND DELIVERY*

Re:     **Athens City Schools – School-Funding Issue**

Dear Dr. Richardson:

Thank you for meeting with me on April 26. As you requested, I am writing to provide you with Athens City Schools' ("ACS") statement concerning the outstanding funding issue. Thank you for the opportunity to present ACS' position.

### Overview

As you know, in the 2016-17 school year, ACS enrolled and provided virtual education services to a number of students that were also enrolled to some degree in private schools (such as Marengo Academy and Lakeside Academy). ALSDE is presently withholding approximately $2 million in state Foundation Program funding attributable to those enrollments while ALSDE determines if the enrollments violated Alabama's Virtual School Law.

However, ACS respectfully submits that it did not violate any law or regulation by enrolling and educating these students. Alabama's 2015 Virtual School Law left enrollment criteria completely up to local boards; it states that local boards will establish "[s]tudent eligibility criteria for … participation in the virtual program" that will "govern the virtual school program offered by [that] local board." In December 2015, Superintendent Tommy Bice agreed, telling LEAs that they had "*complete autonomy* in and responsibility for the development and implementation of the virtual education option." ACS' enrollments were made against this backdrop. With this in mind, ACS respectfully requests that ALSDE release the funding.

In your March 22, 2018 memorandum, you issued a different interpretation of Alabama's 2015 Virtual School Law that provided, among other things, that "virtual students … shall not be enrolled at the same time in another … non-public K-12 school." ACS will of course adhere to

---

### *Board of Education*

*Russell Johnson, President ~Beverly Malone, Vice-President*
*Scott Henry ~ Tim Green ~ James Lucas ~ Shannon Hutton ~ Jennifer Manville*

GOVERNMENT EXHIBIT

8

this new interpretation. But ACS is asking to receive its Foundation funding for the 2016-17 year, when no such interpretation had been issued by ALSDE, Dr. Bice had advised that LEAs had "complete autonomy" in implementing their virtual programs, and the law stated (as it still does) that each board established its own eligibility criteria for its virtual program. Please do not apply your March 2018 memo retroactively, so as to withhold ACS' 2016-17 Foundation funding for those students.

A more detailed analysis, timeline, and request, along with attachments, are set out below.

**Timeline of Events**

Alabama's Virtual School Law, codified at § 16-46A-1, *et seq*. of the *Code of Alabama*, was adopted in July 2015. That law required that all school systems adopt policies providing a virtual education option for students. The law required that the policies include, among other things, "[s]tudent eligibility criteria for initial and continuing participation in the virtual program." Ala. Code § 16-46A-1(b)(2) (1975). The law stated that this local policy "shall govern the virtual school program offered by the local board of education." § 16-46A-1(b). *See* Attachment 1 (Alabama's Virtual School Law).

ACS implemented a number of innovative programs in 2015. One of them was its virtual school program, whereby students both inside and outside of its school district could enroll in ACS as a full-time student and receive virtual education services. Relying on the new law and encouraged by legislators, ACS adopted a number of board policies. Those policies made virtual courses "available for enrolled full-time, non-resident K-12 students who meet [ACS'] eligibility requirements" and established a non-resident student policy that set those eligibility requirements. Among other things, ACS' 2015 policy allowed eligibility "as a full-time enrollee, notwithstanding such student's enrollment in non-public schools ...." *See* Attachment 2 (ACS 2015 Policies).

At a meeting on August 12, 2015, I shared these policies and its plans with Dr. Tommy Bice, State Superintendent of Education. We discussed ACS' intention to reach out to non-public school students to demonstrate how they could enroll and receive a public education through a non-traditional virtual means. Bice encouraged me to reach out to these students, noting the value of reconnecting them to public education. I sent a letter to Bice following that meeting, and a copy of it is Attachment 3 (9/15 Holladay Letter). In the letter, among other things, I explained that "[b]y offering the virtual education option, we hope to attract home school students, private school students, and other non-traditional students that have abandoned public education for various reasons, and to enroll or 'recover' them as full-time students in our school system." Accordingly, ACS began engaging in active efforts to recruit various nontraditional students – including nonpublic school students – into ACS' virtual education program.

On December 11, 2015, Dr. Bice issued a Memorandum to all LEAs.  Citing Alabama's Virtual School Law, he explained that:

> The LEAs have complete autonomy in and responsibility for the development and implementation of the virtual education option; however, please keep in mind that all public education programs are required to abide by federal education statutes, including the *Individuals with Disabilities Education Act* (IDEA), Section 504 of the *Rehabilitation Act of 1973,* and Title II of the *Americans with Disabilities Act* (ADA).

This was completely consistent with my earlier discussions with him.  A copy of this memo is included as <u>Attachment 4</u> (Bice 2015 Memo).

At one point, ACS explored ways it might actually go further and form direct contractual relationships with nonpublic schools (both religious and nonsectarian) to provide public education offerings.  However, in Spring, 2016, I met again with Dr. Bice.  During that visit, Andy Craig raised a concern about this kind of involvement with nonpublic schools.  I had been weighing the "pros and cons" of this as well, and halted further exploration of such relationships.  Additionally, although neither the law nor Bice's views had changed, in light of Andy's concern and wishing to avoid possible problems with his office, I indicated that, while ACS would continue to entice nonpublic school students to return to public education, it would take steps to wind down and reduce enrollments associated with nonpublic schools.

ACS' virtual program continued into the 2016-17 school year, enrolling many virtual school students.  Some of these students were also enrolled in non-public schools.  ACS did not try to police or monitor that student's activities with respect to any relationship or non-relationship with a non-public school.  However, ACS also began to take steps to wind down any enrollments that were also associated with nonpublic schools, for example, by amending one of its local policies during the 2016-17 school year to remove the reference to non-public schools. *See* <u>Attachment 5</u> (2016 ACS Policy).  As a part of its program, ACS entered into contracts with several local school systems, such as the Linden City Board of Education and others, to ensure that if ACS enrolled a full-time student residing in that school system, then ACS would, among other things, pay that school system an amount per each student upon receipt of the Foundation Program allocation for that student.

In March, 2017, near the end of the 2016-17 school year, ALSDE formed a committee of educators to discuss the Virtual School Law.  There was much discussion about whether a virtual public school student should be permitted to also have a relationship with a nonpublic school.  That group ultimately recommended that, among other things, the State Superintendent should decide that a "full-time" virtual student should not also be enrolled in a nonpublic school. This would be a change in view from Dr. Bice's earlier position that local boards had full autonomy to make their own decisions about eligibility.  I was on that committee.  Dee Fowler, Superintendent Sentance's Chief of Staff (Sentance was appointed in September, 2016), issued a March 17, 2017 memorandum that stated in pertinent part as follows:

Many of you are very concerned with the calculation of Average Daily Membership (ADM) in light of the new virtual school law, *Code of Alabama 16-46A-2*. The law states that "a full time student enrolled in a virtual program shall be enrolled and counted in the average daily membership of the local school......" This is very clear. Full-time virtual students will be included in the calculation of a district's ADM. The definition of a full-time student is not included in the law, but having a definition is paramount to calculating a district's ADM.

Several of your colleagues were assembled Thursday morning to work on a definition. The group included: Dr. Trey Holladay, Superintendent of Athens City Schools; Mrs. Sally Howell Smith, Executive Director of AASB; Mr. Randy Fuller, Superintendent of Shelby County Schools; Dr. Eric Mackey, Executive Director of SSA; Dr. Mark Neighbors, Superintendent of Opelika City Schools, Mr. Ethan Taylor, Coordinator of LEA Finance and Budgets; Mr. Andy Craig, Deputy State Superintendent, Administrative and Financial Services; and me.

The following recommended definition has been sent to the State Superintendent of Education for his consideration. You should anticipate a formal communication from him in the near future.

**For the purpose of this Act, a full-time virtual student is one who is currently enrolled and participating in a number of virtual courses sufficient for matriculation from grade to grade, and in the case of Grades 9-12, to be on the track for high school graduation in four years and is not simultaneously enrolled in or attending another public or non-public K-12 school.**

*See* Attachment 6 (2017 Fowler Memo). However, presumably due to some remaining debate about these issues, Sentance never acted on the committee's recommendation. But although Sentance did not act on it, ACS began to explore the additional steps it would need to take if Sentance adopted this interpretation.

Then, in late summer, 2017, ALSDE notified ACS that it would withhold a portion of ACS' Foundation Program funding for the 2016-17 school year because it had been made aware that "students appear to be simultaneously enrolled in both the private school and Athens Renaissance School as well as included in the funded ADM for ACS." Despite not having adopted the committee's March 2017 recommendations or having ever retracted Bice's December 2015 memo, Sentance stated, "[t]his is in conflict with the Virtual School Law and calls into question the legitimacy of a significant portion of the 2017 funded ADM reported by ACS." *See* Attachment 7 (8/2017 Sentance Letter).

Mr. Sentance also advised that one of ACS' vendors had paid certain non-public schools and provided computers. This vendor was supposed to ensure that each student had online access and a computer, and apparently did so by arranging it through the nonpublic school. ACS instructed the vendor to discontinue those activities, and in light of Sentance's position, advised him that ACS would no longer be enrolling students who remained affiliated with non-public schools.

As you know, you replaced Mr. Sentance in mid-September 2017. You wrote me on November 6, 2017, concerning this unresolved matter, and explained that ALSDE would expedite a review related to ACS' virtual program for compliance with various laws and regulations. *See* Attachment 8 (11/17 Richardson Letter). To that end, ALSDE requested various and comprehensive information from ACS. ACS responded and cooperated with its best efforts. ACS identified 286 students in the 2016-17 school year that were also enrolled in non-public schools; ALSDE states that it has identified more.

Last month, on March 22, 2018, you issued a memorandum to all local superintendents that adopted the committee's March 17, 2017 recommendations. In that memorandum, you determined, among other things, that virtual students "shall not be enrolled at the same time in another public or non-public K-12 school" (effectively limiting Bice's earlier guidance). *See* Attachment 9 (Richardson 2018 Memo).

## Legal

Alabama law does not contain anything that would prohibit a virtual education student from also being enrolled (either full-time, part-time, or something in between) in non-public school activities (whether enrolled in a private academy, Sunday school, or private swimming lessons). Furthermore, it allows LEAs to establish their own requirements for student eligibility. Section 16-46A-1 requires that all school systems adopt a policy providing for a virtual education option, that the policy include "[s]tudent eligibility criteria for initial and continuing participation in the virtual program," and that this policy "shall govern the virtual school program offered by the local board of education." § 16-46A-1(b).

As you know, the State Superintendent is charged with explaining the true meaning of the school laws. Ala. Code § 16-4-4 (1975). Dr. Bice did that in his December 11, 2015 memorandum, explaining that "LEAs have complete autonomy in and responsibility for the development and implementation of the virtual school option."

Accordingly, in conjunction with the Alabama Virtual School Law and the State Superintendent's guidance, ACS adopted and applied a policy that permitted allowed a full-time virtual student to enroll even if that student was also enrolled in a non-public school. Pursuant to that policy, some virtual school students in the 2016-17 school year received educational services as full-time ACS students while also being enrolled, in whatever capacities, in non-public school. However, as shown above, this did not violate the Alabama Virtual School Law.

Moreover, there is nothing anywhere else in Alabama law, which would prevent a student from being enrolled in both a public and non-public school. (In fact, ACS' research has not identified any laws in any state prohibiting a student from being enrolled in both a public and non-public school. On the contrary, there are a number of laws in other states that recognize dual enrollments as appropriate.)

There are certainly places where legal problems could occur, given the right combination of facts. One place is in the context of the Establishment Clause, if the public school engages in some kind of activities in conjunction with a nonpublic church school, and a public school is viewed as aiding that church school. However, this was not a problem in ACS' situation because the nonpublic schools were nonsectarian.

Another problem might potentially occur in the area of desegregation, given an appropriate set of facts. Although local boards might be trying to lure nonpublic students back under a public school umbrella through the provision of virtual education, a litigant might claim that the local boards' efforts were somehow disrupting continuing desegregation efforts. (Of course, the same might be argued with respect to any state assistance to a private school, whether it is through ACCESS or through Alabama's legislation offering tax-credit scholarships through the Alabama Accountability Act.) There is no indication that this was a problem in ACS' situation.

As time has gone on, ALSDE leadership has changed, and in turn, ALSDE's interpretation of the Alabama Virtual School Law has also changed.  Instead of interpreting the law to give LEAs "complete autonomy" in their virtual school enrollments, the State Superintendent's office issued a new March 22, 2018 interpretation setting out certain restrictions on those enrollments.  Among other things, it prohibits LEAs from enrolling full-time virtual students that are also enrolled in non-public schools.  Accordingly, this new interpretation is now applicable. Ala. Code § 16-4-4 (1975).  However, "in fairness to all," a new rule or regulation that changes a prior rule or regulation should not be applied retroactively against persons who have justifiably relied on the prior construction and who already have vested rights. *State v. Morrison Cafeterias Consol., Inc.*, 487 So. 2d 898, 903 (Ala. 1985); *see, e.g., Stallworth v. Hicks*, 434 So. 2d 229, 230 (Ala. 1983).

## Request

Dr. Richardson, ACS pledges to abide by the new 2018 interpretation, and it has taken steps to bar those enrollments.  To make a clean break with past practice, ACS is changing vendors and reconfiguring its virtual programs for the 2018-19 school year.  If future ACS enrollments include students that are also enrolled in non-public schools, then ACS will have no objection to ALSDE withholding funding for those students.  But if ALSDE withholds the $2 million in Foundation Program funding for the 2016-17 enrollments, then it will be doing so retroactively or *ex post facto*– applying today's new interpretation to counteract yesterday's interpretation.  However, we have already expended funds to provide full-time education services to these 2016-17 students – and we cannot retroactively reverse those expenses or those services.

Moreover, if ALSDE withholds the $2 million in Foundation Program funding for those 2016-17 enrollments, it would be a tremendous blow.  That funding has been budgeted and counted on for current expenses – and a cut of this magnitude would have a serious adverse impact.  Moreover, since Alabama state education funding is paid in arrears, nothing would limit education innovation more than the prospect that the innovations that are currently encouraged or authorized by ALSDE, will be retroactively outlawed by ALSDE when it is time for them to be funded.

Andy Craig advised at our April 26 meeting that ALSDE has identified several of our ACS students in the 2017-18 school year that have also been affiliated, to some degree, with nonpublic schools.  Assuming that is the case, ACS has no objection to its 2018-19 Foundation Program funding being reduced with respect to such students because: (i) in August, 2017, ACS represented to ALSDE that it was taking measures to make sure that there were no more such students, and (ii) ACS was aware of Mr. Sentance's August, 2017 letter in which he opposed such enrollments.  This will result in a negative financial impact on our system, but, again, it is one that we understand and accept.  However, that does not relate to the 2016-17 school year or the 2017-18 Foundation Program funding.

Dr. Richardson, for all of the above reasons, ACS very respectfully requests that ALSDE release the state funding that is being withheld for the 2016-17 school year, and pledges to abide by your 2018 interpretation going forward.  I cannot stress enough that ACS wants to productively resolve this issue and move forward.  We have no desire to be a problem for ALSDE and want to work in complete concert with ALSDE on all of our innovative programs.

We look forward to hearing from you soon and resolving this issue.

Sincerely,

W.L. "Trey" Holladay
Superintendent

We've updated our Privacy Statement. Before you continue, please read our new Privacy Statement and familiarize yourself with the terms.

WESTLAW

Attachment 1

Code of Alabama
Title 16. Education. (Refs & Annos)
Chapter 46A. Virtual Education. (Refs & Annos)
§ 16-46A-1. Adoption of policy governing virtual school program.
Code of Alabama   Title 16. Education.   (Approx. 2 pages)
Ala.Code 1975 § 16-46A-1

§ 16-46A-1. Adoption of policy governing virtual school program.

Currentness

(a) Before the 2016-2017 school year, each local board of education shall adopt a policy providing, at a minimum, a virtual education option for eligible students in grades nine to 12, inclusive, beginning with that school year.

Any virtual school operating in this state that provides educational services to public school students shall comply with this chapter.

(b) The policy adopted by the local board of education pursuant to this chapter shall govern the virtual school program offered by the local board of education. The policy shall offer students in grades nine to 12, inclusive, an online pathway for earning a high school diploma and, at a minimum, shall include all of the following:

(1) The scope and delivery of virtual options.

(2) Student eligibility criteria for initial and continuing participation in the virtual program.

(3) Specific requirements for monitoring performance and testing protocol consistent with this chapter.

(4) Attendance requirements, if any.

(c) A local board of education shall not be required to utilize a state program or vendor for the provision of virtual school options.

**Credits**
(Act 2015-89, p. 300, § 1.)

Ala. Code 1975 § 16-46A-1, AL ST § 16-46A-1
Current through Act 2018-124, Act 2018-126 through Act 2018-151, and Act 2018-153 through Act 2018-525

End of
Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw. © 2018 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)   Improve Westlaw   THOMSON REUTERS

https://1.next.westlaw.com/Document/N767FCD00F3FD11E4BC25B6DFA2E6CDB0/View/FullText.html?originationContext=documenttoc&transitionType=Catego

We've updated our **Privacy Statement.** Before you continue, please read our new Privacy Statement and familiarize yourself with the terms.

WESTLAW

Code of Alabama
   Title 16. Education. (Refs & Annos)
      Chapter 46A. Virtual Education. (Refs & Annos)
§ 16-46A-2. Enrollment; participation and attendance; online course requirements.
Code of Alabama   Title 16. Education.   (Approx. 2 pages)
                                        Ala.Code 1975 § 16-46A-2

## § 16-46A-2. Enrollment; participation and attendance; online course requirements.

Currentness

(a) A full-time student enrolled in a virtual program shall be enrolled and counted in the average daily membership of the local school, participate in state testing and accountability requirements through the local school system, and, upon satisfying the graduation requirements of the local board of education, receive a diploma from the local school system.

(b) Any provision of this chapter to the contrary notwithstanding, a student enrolled in a virtual school program offered by his or her local school system shall be treated as if he or she is attending his or her local school in the attendance zone in which they reside for purposes of participating in extracurricular activities and shall be subject to the same requirements, including Alabama High School Athletic Association rules, imposed on a traditional public school student enrolled in the traditional public school.

In addition, if local board of education policy permits inter-system transfer for all students, a student enrolled under this policy shall be treated as if he or she is attending his or her school of record for the purposes of participating in extracurricular activities and shall be subject to the same requirements, including Alabama High School Athletic Association rules, imposed on a traditional public school student enrolled in the traditional public school.

(c) A board of education shall be exempt from any provision of general law, local law, or administrative rule that applies to the traditional delivery of instruction including, but not limited to, requirements relating to the physical presence of a student, student monitoring and security, staffing requirements, transportation obligations, facility requirements, space and location requirements, time requirements, and physical education requirements to the extent any of the foregoing conflict with the delivery of the virtual program.

(d) A local board of education is not subject to online course restrictions imposed by the State Department of Education.

(e) Any online course delivery that is not supported by the State Department of Education shall be accredited by an institution recognized pursuant to administrative rule adopted by the department.

(f) Coursework offered through a virtual program shall contain the required content as identified in the applicable Alabama course of study.

**Credits**
(Act 2015-89, p. 300, § 2.)

Ala. Code 1975 § 16-46A-2, AL ST § 16-46A-2
Current through Act 2018-124, Act 2018-126 through Act 2018-151, and Act 2018-153 through Act 2018-525

**End of**                  © 2018 Thomson Reuters. No claim to original U.S. Government Works.
**Document**



# ATHENS
## RENAISSANCE SCHOOL

# ACS – RENAISSANCE SCHOOL AND VIRTUAL PROGRAM POLICIES

POLICY: ILB

### THE ATHENS RENAISSANCE SCHOOL, A NON-TRADITIONAL PUBLIC EDUCATION FRAMEWORK AND THE VIRTUAL PROGRAM OPTIONS

The Athens City School System offers a non-traditional public education provided through the Athens Renaissance School. Courses are developed and taught by highly qualified, certified teachers or facilitated through high-quality online curriculum aligned to the ALSDE-CCRS.

## SCOPE AND DELIVERY

Instruction at the Athens Renaissance School is delivered through *traditional face-to-face instruction, non-traditional virtual facilitation, or a blended combination of the two.* The system's learning management system (LMS) and other innovative instructional technologies house our course curriculum that allows teachers to facilitate teaching and learning. Each student and their parent(s) develop a customized personal education plan with an administrator and/or counselor that allows teachers to utilize the system's instructional policies and procedures, Alabama's College and Career Standards, best practice frameworks, state assessments and PLAN 2020 when developing and building lessons and facilitating classes. All Athens Renaissance School courses are accredited and approved by the Athens City Board of Education.

## ELIGIBILITY CRITERIA

Athens Renaissance School courses and programs are free for enrolled full-time students meeting the residency requirements of Policy JBC, and available for a non-resident student tuition fee for enrolled full-time, non-resident students who meet Policy JBCB eligibility requirements and Athens City Schools enrollment procedures. Students who enroll through Policy JBCB for non-resident students are offered courses based on availability.

Students may enroll on either a full-time or guest-enrollment basis through their customized learning plan.  Guest enrollment students may pay a fee relative to the number of courses they take. Guest enrollment students are offered courses based on availability.

Students who choose to take courses above and beyond a full course load may be required to pay tuition for the additional courses if they plan to graduate early.

## PERFORMANCE MONITORING AND TESTING PROTOCOL

The Athens Renaissance School is governed by the policies and procedures of Athens City Schools. All policies adopted by the Athens City Board of Education and all applicable administrative code and laws adopted by the State Board of Education and Alabama Legislature are applicable (to the extent that they are not otherwise waived pursuant to the Alabama Accountability Act of 2013). All policies and procedures adopted by the Athens City Board of Education apply to the Athens Renaissance School programs unless expressly stated within this policy (ILB) or attached addendum.

## ATTENDANCE REQUIREMENTS

The Athens Renaissance School monitors student attendance in accordance with all applicable statutes set by the state of Alabama, as well as reports all truant students to the appropriate legal authorities. Parent(s)/guardian(s) with legal responsibility for a child between the age of six (6) and seventeen (17) years of age are responsible for the student's attendance in a public school unless otherwise exempt by law.  In the event that a Renaissance student is truant, the parent(s)/guardian(s) are subject to all penalties provided for under Alabama's Compulsory School Attendance Law.

Renaissance School attendance is based upon one of two methods or a combination of both. Traditional attendance is measured by the physical presence of the student at the Athens Renaissance School facility.  Non-traditional attendance is measured through the completion of lessons/assignments consistent with the student's customized learning plan, and developed for students in every course that includes the due dates for each assignment. *Students are required to remain on-pace and complete all assignments with a minimum score of 70%, to be considered present and attending, as well as to progress in the course.* Simply logging into the learning management system (LMS) or course is not considered attending for purposes of Alabama's Compulsory School Attendance Law.

The attached addendum is designed to ensure the efficient and effective operations of our innovative programs and the ultimate mastery and achievement of those students enrolled while also securing academic integrity.

POLICY:   ILB-A

## PARTICIPATION OF NON-PUBLIC SCHOOL AND HOME-BASED PRIVATE EDUCATIONAL PROGRAM STUDENTS IN ATHENS RENAISSANCE SCHOOL COURSES/PROGRAMS

Upon satisfaction of full-time or guest enrollment requirements at the Athens Renaissance School, the Athens City Board of Education allows students to participate in the courses and programs of the Athens Renaissance School as a full-time enrollee or guest enrollee, notwithstanding such students' enrollment in non-public schools or participation in home-based private educational programs.

The Athens City Board of Education distinguishes between students residing inside the school district and students residing outside the school district.  ACS-BOE policy JBCB relates to the admission of non-resident students, and sets out additional requirements prior to such students being subject to full-time admission at the Athens Renaissance School.

Transportation to and from Athens Renaissance School classes, programs or activities shall be the responsibility of the student's parent(s)/guardian(s), except as otherwise specifically provided.

*Authority/References*

Ala. Code § 16-11-9 (1975); Ala. Code § 16-1-11.2 (1975).

Attachment 3

**ATHENS**
CITY SCHOOLS

*455 US Highway 31 North*
*Athens, Alabama 35611-2698*
*Telephone (256)233-6600*
*FAX (256) 233-6640*
*W.L. Holladay, III ~ Superintendent*

September 3, 2015

Dr. Thomas R. Bice
State Superintendent
Alabama State Department of Education
P.O. Box 302101
Montgomery, Alabama 36104

Dear Dr. Bice:

Thank you again for discussing the Athens City Schools' Renaissance School meeting with me in your office on Wednesday, August 12, and again by telephone on Tuesday, September 1. I am looking forward to continuing and expanding this new program. Our local board of education believes that it can reintroduce the value of public school to families that have abandoned it, and that it can make public education possible for many non-traditional students.

During our conversations, we discussed some of the applications of the new Alabama Act No. 2015-89 (the "Virtual Schools Act") to the Renaissance School's virtual program. I'm writing to confirm our understandings from those discussions, and to ask that you let us know right away if you see anything in this letter that gives you any concern, or anything that I have misunderstood.

As you will recall, the Athens City Board of Education is proceeding to establish a virtual school option for students through our system's Renaissance School. (The Renaissance School is currently a program of Athens High School, but we expect that it may soon be large enough to constitute a separate school cost center.) There are two types of students in the Renaissance School that can participate in the virtual option: (i) those full-time students enrolled in the Athens City Schools system, and (ii) students who are "guest-enrollment" students and are not enrolled in the Athens City Schools system.

**Full-Time Students**

Full-time students participating in the virtual school option at the Renaissance School are enrolled as full-time students in the Athens City Schools system, in the same manner as traditional students. By offering the virtual program option, we hope to attract home school students, private school students, and other non-traditional students that have abandoned public education for various reasons, and to enroll or "recover" them as full-time students in our school system.

Importantly, we understand that, pursuant to § 2 of the Virtual Schools Act, once they are enrolled as "full-time student[s]" within our virtual program, these students will be "counted in [our school system's] average daily membership" on the same basis as any other student in our system, "participate [in our system's] state testing and accountability requirements", and "receive a diploma" from our school system.

As you know, our enrollment of such students is not limited to the boundaries of our school district. Alabama law permits local school systems to accept students from outside the geographic boundaries of its school district, *see Phenix City Board of Educ. v. Teague*, 515 So. 2d 971 (Ala. 1987),

*Board of Education*
*Russell Johnson, President ~ Beverly Malone, Vice-President*
*Scott Henry ~ Tim Green ~ James Lucas ~ Chris Paysinger ~ Jennifer Manville*

and the Athens City Board of Education is one of several school boards in the State that allow enrollment by students who live outside of the school district. We have identified no law or regulation that would limit this admission practice to traditional student enrollments, or that would require the consent of other school systems before such enrollment can occur. As such, our system is enrolling non-traditional students (who are not otherwise enrolled as public school students) from both our district and from across the State as full-time students in our school system (limited, of course, by our own logistical considerations, such as capacity).

I want to thank both you and Andy Craig for confirming to Barry Hamilton and myself on August 12 that all of these full-time students enrolled in our virtual program will be counted in our system's average daily membership on the same basis as traditional students. This seems to be exactly what § 2 of the Virtual School Act says, but we obviously wanted to make sure, since state funding for these students is provided a year in arrears, and our system will be investing significant funds into this operation. Indeed, in addition to using our own staff, we have already contracted with a vendor, Fuel Education, LLC, to help facilitate virtual instruction of these students.

I also appreciate and agree with you that a "full-time student", as referenced in § 2 of the Virtual Schools Act can be reasonably defined by local board policy. Our local board policy would require a full-time student enrolled in a virtual program to take, at minimum, six (6) credits per year at either the traditional or accelerated pace. Thus, a "full-time student" would include, for example, a student that is provided instruction in a linear format (taking one course at a time), rather than in a traditional format (all courses taken at once). In that example, it is reasonable that both kinds of students are viewed as "full-time students"; since, at the end of the year, both students would have participated in the same minimum amount of course instruction.

### Guest-Enrollment Students

In contrast to full time students, guest-enrollment students are students that take one or more virtual school classes from the Renaissance School, but are not enrolled as full-time students in the Athens City Schools system. As such, they are not included in our system's average daily membership, they do not participate in state testing and accountability, and they would not receive a diploma from our system. In the meantime, if these students are enrolled in other public school systems, then they would continue to be enrolled in that public school system (*i.e.*, counted in that system's average daily membership, participating in state testing and accountability in that system, and being awarded a diploma from that system)). Moreover, if these guest students are enrolled in a private school or are home-schooled, then these guest students would remain in such status; they would merely take one or more courses from the Renaissance School as guests. All of these guest-enrollment students would pay our school system a fee for each course. (We understand that Alabama law allows a school board to collect tuition fees from non-resident students. *See* Ala. Code § 16-10-6 (1975).) As above, Athens City Schools is prepared to accept guest-enrollment students from both inside and outside the school district (again, subject to logistical considerations such as capacity).

This guest-enrollment status is one of the subjects of our system's recent Innovation Zone/Flexibility Application. State laws and regulations enacted prior to the Virtual Schools Act suggest various potential obstacles concerning student guest-enrollments (such as restrictions on "correspondence courses" and/or "tutorial study", and requiring fees in courses required for graduation). Although § 2(c) of the Virtual Schools Act broadly exempts the Athens City Board of Education from all state laws and regulations that apply to the traditional delivery of instruction, it seemed prudent to request a flexibility waiver to eliminate any doubts as to our system's ability to engage in the practice of guest enrollments. We look forward to receiving the Department's approval as to our Innovation Zone/Flexibility Application.

By engaging in this guest-enrollment practice, we also hope to assist other Alabama school systems in complying with §1(a) of the Virtual Schools Act's requirement that all local boards must adopt a policy providing a minimum virtual education option before the 2016-17 school year. These systems will have the option to use Athens City Schools as their provider of virtual education. Moreover, pursuant to §2(b) of the Virtual Schools Act (which contemplates "inter-system transfers" among school districts), these guest-enrollment students would remain eligible for extracurricular activities, including athletics, in their "home school" where they remain enrolled.

Again, thank you for discussing this aspect of the Athens Renaissance School with me. Please let me know if you have any additional thoughts concerning any of the above, or if I have misunderstood any of our conversations.

Sincerely,

W.L. 'Trey' Holladay, III
Superintendent
Athens City Schools

Attachment 4



**STATE OF ALABAMA**
**DEPARTMENT OF EDUCATION**



Thomas R. Bice
State Superintendent of Education

December 11, 2015

M E M O R A N D U M

TO:        City and County Superintendents of Education

FROM:   Thomas R. Bice *TRB*
             State Superintendent of Education

SUBJECT:   Virtual Schools (and Programs)

As you know, Act 2015-89 requires each local education agency (LEA) to adopt a policy providing, at a minimum, a virtual education option for eligible students in Grades 9-12 before the 2016-2017 school year.

The LEAs have complete autonomy in and responsibility for the development and implementation of the virtual education option; however, please keep in mind that all public education programs are required to abide by federal education statutes, including the *Individuals with Disabilities Education Act* (IDEA), Section 504 of the *Rehabilitation Act of 1973*, and Title II of the *Americans with Disabilities Act* (ADA).

Please see the enclosed "Virtual Schools (and Programs) Guidance for Students with Disabilities" for additional information.

Should you need further assistance in this matter, please contact either Dr. DaLee Chambers or Mr. Joe Eiland at (334) 242-8114. You may also contact them by e-mail at daleec@alsde.edu or jeiland@alsde.edu.

TRB/DC/SR

Enclosure

cc:    City and County Special Education Coordinators
         Mrs. Sherrill W. Parris
         Dr. Melinda Maddox
         Dr. Linda Felton-Smith
         Ms. Crystal Richardson
         Mrs. Erika Richburg
         Dr. DaLee Chambers
         Mr. Joe Eiland
FY16-2023

**Alabama State Board of Education**

Governor Robert Bentley
President

Matthew S. Brown, J.D.
District I

Betty Peters
District II

Stephanie Bell
District III

Yvette M. Richardson, Ed.D.
District IV
President Pro Tem

Ella B. Bell
District V

Cynthia McCarty, Ph.D.
District VI

Jeff Newman
District VII
Vice President

Mary Scott Hunter, J.D.
District VIII

Thomas R. Bice, Ed.D.
Secretary and Executive Officer

Attachment 5

FILE: ILB-A

### PARTICIPATION OF NON-PUBLIC SCHOOL AND HOME-BASED PRIVATE EDUCATIONAL PROGRAM STUDENTS IN ATHENS RENAISSANCE SCHOOL COURSES/PROGRAMS

Upon satisfaction of full-time enrollment requirements at the Athens Renaissance School, the Athens City Board of Education allows students to participate in the courses and programs of the Athens Renaissance School as a full-time enrollee, notwithstanding such students' participation in home-based private educational programs.

Upon satisfaction of guest enrollment requirements at the Athens Renaissance School, the Athens City Board of Education allows students to participate in the courses and programs of the Athens Renaissance School as a guest enrollee, notwithstanding such students' enrollment in non-public schools or participation in home-based private educational programs.

Transportation to and from Athens Renaissance School classes, programs or activities shall be the responsibility of the student's parent(s)/guardian(s), except as otherwise specifically provided.

*Authority/References*

Ala. Code § 16-11-9 (1975); Ala. Code § 16-1-11.2 (1975).  ADOPTED:  June 11, 2015;  REVISED: August 18, 2016

Attachment 6



**STATE OF ALABAMA**
**DEPARTMENT OF EDUCATION**



Michael Sentance, J.D., LL.M.
State Superintendent of Education

<div style="float:left">

Alabama
State Board
of Education

Governor
Robert Bentley
President

Jackie Zeigler
District I

Betty Peters
District II

Stephanie Bell
District III

Yvette M. Richardson, Ed.D.
District IV
Vice President

Ella B. Bell
District V

Cynthia McCarty, Ph.D.
District VI

Jeff Newman
District VII

Mary Scott Hunter, J.D.
District VIII
President Pro Tem

Michael Sentance, J.D., LL.M.
Secretary and
Executive Officer

</div>

March 17, 2017

M E M O R A N D U M

TO:       City and County Superintendents

FROM:   Dee O. Fowler
          Chief of Staff

RE:       Calculation of Average Daily Membership (ADM)

Many of you are very concerned with the calculation of Average Daily Membership (ADM) in light of the new virtual school law, *Code of Alabama 16-46A-2*. The law states that "a full time student enrolled in a virtual program shall be enrolled and counted in the average daily membership of the local school......" This is very clear. Full-time virtual students will be included in the calculation of a district's ADM. The definition of a full-time student is not included in the law, but having a definition is paramount to calculating a district's ADM.

Several of your colleagues were assembled Thursday morning to work on a definition. The group included: Dr. Trey Holladay, Superintendent of Athens City Schools; Mrs. Sally Howell Smith, Executive Director of AASB; Mr. Randy Fuller, Superintendent of Shelby County Schools; Dr. Eric Mackey, Executive Director of SSA; Dr. Mark Neighbors, Superintendent of Opelika City Schools, Mr. Ethan Taylor, Coordinator of LEA Finance and Budgets; Mr. Andy Craig, Deputy State Superintendent, Administrative and Financial Services; and me.

The following recommended definition has been sent to the State Superintendent of Education for his consideration. You should anticipate a formal communication from him in the near future.

For the purpose of this Act, a full-time virtual student is one who is currently enrolled and participating in a number of virtual courses sufficient for matriculation from grade to grade, and in the case of Grades 9-12, to be on the track for high school graduation in four years and is not simultaneously enrolled in or attending another public or non-public K-12 school.

The burden of proof would lie with the district that is claiming that a virtual student is a full-time student.

I know that virtual education is a new tool that can be effective in engaging students. We will continue to explore this innovative approach and are receptive to any ideas that you may have.

DOF:RS

FY17-1009

Attachment 7



## STATE OF ALABAMA
## DEPARTMENT OF EDUCATION



Michael Sentance, J.D., LL.M.
State Superintendent of Education

Alabama
State Board
of Education

Governor Kay Ivey
President

Jackie Zeigler
District I

Betty Peters
District II

Stephanie Bell
District III
Vice President

Yvette M. Richardson, Ed.D.
District IV

Ella B. Bell
District V

Cynthia McCarty, Ph.D.
District VI
President Pro Tem

Jeff Newman
District VII

Mary Scott Hunter, J.D.
District VIII

Michael Sentance, J.D., LL.M.
Secretary and
Executive Officer

August 17, 2017

Dr. W. L. Holladay, III, Superintendent
Athens City Board of Education
455 U. S. Highway 31 North
Athens, AL  35611-2653

Dear Dr. Holladay:

As you know, the Alabama State Department of Education (ALSDE) has had concerns regarding the virtual student component of Athens City Schools' (ACS) enrollment and has withheld funding pending validation of the related data. The ALSDE has been contacted on several occasions by representatives of private schools and others across the state with concerns regarding offers made to private school students to enroll in the Athens Renaissance School. Through these inquiries, we have been led to understand that, in exchange for enrollment and access to virtual content provided through Athens Renaissance School, the private school is offered a per student allotment as well as a laptop for each student enrolled.

In an effort to confirm the accuracy of the enrollment data reported by ACS, we obtained enrollment information from one such private school that has reportedly partnered with ACS in the manner described above. A review was conducted on a sample of students for compliance with the Virtual School Law. The results of this review showed that students appear to be simultaneously enrolled in both the private school and Athens Renaissance School as well as included in the funded ADM for ACS. This is in conflict with the Virtual School Law and calls into question the legitimacy of a significant portion of the 2017 funded ADM reported by ACS.

The validity of reported enrollment is the responsibility of the local school system. If you have information that differs from our findings and verifies legal compliance for all virtual enrollees, we offer the opportunity for ACS to provide this evidence.

Innovation is at the center of improvement in public education. Without the imagination and courage to promote new ideas, we will never move forward to advance our understanding of what works in schools. I stand with many who admire your willingness to think broadly and creatively. However, we need to operate within the parameters of law. In light of our findings thus far, we will need to consider, among other things, an extrapolation of disallowed ADM and corresponding consequences in funding.

Thank you for your prompt attention to this matter. Please do not hesitate to contact me to discuss this matter.

Sincerely,

Michael Sentance
State Superintendent of Education

MS/AC/EK

GORDON PERSONS BUILDING • P.O. BOX 302101 • MONTGOMERY, ALABAMA 36130-2101 • TELEPHONE (334) 242-9700 • FAX (334) 242-9708 • WEB SITE: www.alsde.edu

Attachment 8



STATE OF ALABAMA
DEPARTMENT OF EDUCATION



Ed Richardson
Interim State Superintendent of Education

November 6, 2017

Alabama
State Board
of Education

Governor Kay Ivey
President

Jackie Zeigler
District I

Betty Peters
District II

Stephanie Bell
District III
Vice President

Yvette M. Richardson, Ed.D.
District IV

Ella B. Bell
District V

·

Cynthia McCarty, Ph.D.
District VI
President Pro Tem

Jeff Newman
District VII

Mary Scott Hunter, J.D.
District VIII

Ed Richardson
Interim Secretary and
Executive Officer

Dr. W. L. Holladay, III, Superintendent
Athens City Schools
455 U. S. Highway 31 North
Athens, AL 35611-2653

Dear Dr. Holladay:

I have been informed of an unresolved matter involving virtual student enrollment of Athens City Schools (ACS) for the 2016-2017 school year. I further understand that the Alabama State Department of Education (ALSDE) is currently withholding a portion of ACS's 2018 Foundation Program funding pending review and verification of certain data. In order for a resolution to be reached as soon as practical, I have instructed the staff here at the ALSDE to expedite a review of information related to your virtual program for compliance with various laws and regulations.

The enclosed request for information will assist us in making our evaluation. We request the district's response within 15 days. Please feel free to submit the information electronically in response to this request.

Thank you in advance for your cooperation and assistance, and please do not hesitate to contact Mr. Andy Craig at (334) 242-9755 or acraig@alsde.edu with any questions.

Sincerely,

Ed Richardson
Interim State Superintendent of Education

ER:AC:LAK

Enclosure

INFORMATION REQUEST

1. Please provide a detailed list of all students enrolled (included in 20-day funded ADM) in ACS's Athens Renaissance School for the 2016-2017 school year. Please indicate each student's name, address, race/ethnicity, free/reduced status, and regular or special education designation.

2. In addition to the information requested in Item One above, for all students included in one above enrolled in or withdrawn from a private school, please also indicate the name of the private school attended and/or withdrawn from, parent/guardian name, address and contact information, and standardized test results where applicable.

3. Please provide copies of all withdrawal forms applicable to students identified in two above.

4. Please provide copies of all program related contractor agreements (executed and not-executed) extended or otherwise offered/requested to/from individuals, superintendents, headmasters, LEA's, educational entities, school boards, etc., for services including but not limited to guidance, advice, and assistance concerning various independent-virtual education projects, including innovative education initiatives, personnel management and nontraditional education delivery.

5. Please fully describe the business/educational objectives of these contracts.

6. Please provide copies of all agreements entered into over the two-year period that ended September 30, 2017, by ACS with vendors related to any facet of ACS's virtual program.

7. Please describe in detail all contracted vendor methodologies to recruit or make virtual offerings known to potential virtual program enrollees over the two-year period that ended September 30, 2017. Also, please provide any marketing materials, procedural documents, name and contact information of company representatives, etc., that may be helpful in performing our evaluation.

8. Please provide copies of all agreements from inception with virtual content providers and any other agreements related to ACS' virtual program.

9. We understand from ACS officials that private school students were specifically targeted for virtual program enrollment and that private schools had been forced to shut down in some instances. Please provide any information or related analysis that has been performed as to these impacts on private schools.

10. With regard to the areas where the private schools are located for which ACS has enrolled students, please provide enrollment policies/practices established for ensuring equal access for all students regardless of social class, gender, ethnicity, or physical and mental disabilities to enroll.

11. Please provide a copy of policies for liability and expenditure recognition related to ACS virtual program activities.

12. Please provide expenditure activity detail (date, check number, invoice number, vendor/payee name, description of goods/services, general ledger account distribution, and payment amount) for all virtual program expenses for FY 2016 and FY 2017. Additionally, please provide copies of source document backup for all items.

13. Please provide detail listing of any unrecorded liabilities related to virtual program activities as of September 30, 2017.

14. Please provide activity detail listing (date, receipt number, payer name, description, general ledger account distribution, and amount) of fees collected in connection with virtual program services provided for FY 2016 and FY 2017. Additionally, please provide copies of source document backup for all items.

Attachment 9



**STATE OF ALABAMA**
# DEPARTMENT OF EDUCATION



Ed Richardson
Interim State Superintendent of Education

Alabama
State Board
of Education

Governor Kay Ivey
President

Jackie Zeigler
District I

Betty Peters
District II

Stephanie Bell
District III
Vice President

Yvette M. Richardson, Ed.D.
District IV

Ella B. Bell
District V

Cynthia McCarty, Ph.D.
District VI
President Pro Tem

Jeff Newman
District VII

Mary Scott Hunter, J.D.
District VIII

Ed Richardson
Interim Secretary and
Executive Officer

March 22, 2018

M E M O R A N D U M

**TO:**   City and County Superintendents

**FROM:**   Ed Richardson
Interim State Superintendent of Education

**RE:**   Virtual School Act 2015-89 Interpretation and Procedures

Over the past few weeks the Alabama State Department of Education has been working on a virtual document that states our interpretation of the law, in regards to virtual enrollment, and clarifies some procedural areas. In this memo you will see three main points being discussed. One being the definition of a full time student, the second main point deals with the Local Education Agency (LEA) in which a virtual student is to be enrolled, and the third defines a "Guest" enrollment and how that is to be handled for enrollment purposes.

**Virtual School Act 2015-89 Interpretation and Procedures**

1. All school systems must adopt a policy that addresses how the system will provide a virtual option for students in Grades 9 through 12, at a minimum.

2. Any virtual course that is not supported by the Alabama State Department of Education shall be accredited by a regional or national accrediting agency, as verified by the Alabama State Department of Education.

3. Virtual students:

   (a) Are defined as students who are currently enrolled or shall be enrolled and participating in a number of virtual courses sufficient for matriculation from grade to grade, and in the case of Grades 9 through 12, to be on the track for high school graduation in four years and shall not be enrolled at the same time in another public or non-public K-12 school.

   (b) Must enroll in the local system. When the term local system is used in this document it shall refer to the school system from which the student is receiving the virtual education.

   (c) Must participate in state testing/accountability in the local system in which the student is receiving the virtual education.

City and County Superintendents
Page 2
March 22, 2018

(d) Must comply with the local board policy for virtual option delivery adopted by the local system in which the student is receiving the virtual education.

(e) Will be awarded a diploma upon satisfying the graduation requirements of the state and their local system where they receive the virtual education.

(f) Who are enrolled as a "Guest" student(s) in a virtual school for one or more courses shall not be counted for state funding on the virtual school's student count and shall pay for the "Guest" student(s) virtual courses. A "Guest" student is defined as a student that takes one or more virtual courses but does not meet the full-time definition described in (a).

ER:ET:EK

**FY18-3027**